UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MARINE ELECTRONICS
ENGINEERING, INC.,

    Plaintiff,

v.                                            Case No.  8:10-cv-588-T-24-AEP

UNITED STATES OF AMERICA,

    Defendant.
_____/

## ORDER

This cause comes before the Court on Defendant United States' Motion to Dismiss Plaintiff Marine Electronics Engineering, Inc.'s ("Marine Electronics") complaint pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.[1]  (Doc. No. 16).  Marine Electronics opposes this motion  (Doc. No. 17), and the United States has filed a reply to Marine Electronics' opposition.  (Doc. No. 24).

**I.**    **Background**

This case arises from Marine Electronics' alleged work on board the United States Coast Guard vessels Chandeleur and Vise.  (Doc. No. 1).  Marine Electronics alleges the following in its complaint: Marine Electronics performed several work items on board the Chandeleur as a subcontractor to Riverhawk Marine, LLC ("Riverhawk").  (Id. at ¶ 5).  On August 14, 2008, Marine Electronics invoiced Riverhawk for $31,694.63 representing the cost of repair work

---

[1] The Government labeled the instant motion as one for dismissal and/or for summary judgment; however, the motion does not refer to evidence outside the complaint.  Therefore, the Court will treat this motion solely as a motion for dismissal.

performed on board Chandeleur. Marine Electronics received only $21,000.00 from Riverhawk for those services, leaving a remaining balance of $10,694.63. (Id. at ¶ 6). Marine Electronics also performed several work items on board the Vise as a subcontractor to Nauticare, LLC ("Nauticare"). (Id. at ¶ 7). On December 23, 2008, February 9, 2009, and March 3, 2009, Marine Electronics invoiced Nauticare for the cost of repair work performed on the Vise for $77,999.22, but was never paid. (Id. at ¶ 8). Marine Electronics alleges that the United States had actual or constructive knowledge that Marine Electronics performed satisfactory work on both Chandeleur and Vise as a subcontractor. (Id. at ¶ 10).

Marine Electronics filed suit against the United States alleging that its outstanding balances for the work performed on the Chandeleur and Vise created maritime liens as to each vessel. (Id. at ¶¶ 16, 21). Therefore, in its two-count complaint, Marine Electronics asserts a claim to foreclose its maritime lien as to each vessel. (Doc. No. 1). In response, the United States moved to dismiss the suit for lack of subject matter jurisdiction. (Doc. No. 16).

**II.     Standard of Review**

Since the United States has made a factual attack on the Court's subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), Marine Electronics has the burden of proving by a preponderance of the evidence that subject matter jurisdiction exists. See Paterson v. Weinberger, 644 F.2d 521, 523 (5th Cir. 1981). In such a situation:

> [T]he district court is free to independently weigh facts, and "may proceed as it never could under Rule 12(b)(6) or Fed.R.Civ.P. 56. Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction--its very power to hear the case-- there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of the jurisdictional issue."

Morrison v. AmWay Corp., 323 F.3d 920, 925 (11th Cir. 2003) (quoting Lawrence v. Dunbar, 919 F.2d 1525, 1529 (11th Cir. 1990).

**III.    Discussion**

The United States filed the instant motion to dismiss arguing that this Court lacks subject matter jurisdiction over this case because (1) the United States has not waived its sovereign immunity with respect to the maritime lien claim brought against the Chandeleur and Vise; (2) the Commercial Instruments and Maritime Liens Act, which creates the cause of action Marine Electronics is pursuing, prohibits suits against public vessels such as the Chandeleur and Vise; and (3) Marine Electronics failed to exhaust its administrative remedies as required by the Contracts Dispute Act.  The Court will address each of these arguments in turn.

A.    Waiver of the United States' Sovereign Immunity

The United States briefly argues that this Court lacks subject matter jurisdiction over this case because the United States has not waived its sovereign immunity as to Marine Electronics' maritime lien claim.  However, there are two statutes that waive the United States' sovereign immunity in suits against public vessels.  The Suits in Admiralty Against the United States Act, 46 U.S.C. § 30903 ("SAA"), waives the United States' sovereign immunity in suits against public vessels in certain situations.  Specifically, the SAA provides: "[i]n a case in which, if a vessel were privately owned or operated . . . a civil action in admiralty could be maintained, a civil action in admiralty in personam may be brought against the United States . . .."  46 U.S.C. § 30903(a).  Additionally, the Public Vessels Act, 46 U.S.C. 31102 ("PVA"), waives the United States' sovereign immunity in suits against public vessels when an *in personam* suit is filed against the United States in admiralty that seeks "compensation for towage and salvage services,

including contract salvage, rendered to a public vessel of the United States." 46 U.S.C. 31102.

The Eleventh Circuit has held that these two statutes permit plaintiffs to bring maritime lien claims on a public vessel against the United States on principles of *in rem* liability. Marine Coatings of Alabama, Inc. v. United States, 932 F.2d 1370, 1375 (11th Cir. 1991); see also Bonnani Ship Supply, Inc. v. United States, 959 F.2d 1558, 1560 n.4 (11th Cir. 1992) (holding that "[t]he SAA confers federal jurisdiction over suits in admiralty against the United States *in personam*, effecting a waiver of sovereign immunity by the United States in cases where a proceeding in admiralty could be maintained against a privately owned vessel). Additionally, the Eleventh Circuit has noted that the SAA and PVA must be read together regarding federal jurisdiction over suits in admiralty against public vessels. Marine Coatings, 932 F.2d at 1373 n.1; Bonnani, 959 F.2d at 1561.

In the instant case, Marine Electronics alleges that its claim against the United States is based on maritime liens against the Coast Guard vessels Chandeleur and Vise. (Doc. No. 1). According to the facts alleged in Marine Electronics' complaint, either the SAA or PVA apply to this case to effect a waiver of the United States' sovereign immunity. Under the SAA framework, Marine Electronics has sufficiently alleged facts showing that it would have valid civil admiralty claims if the two Coast Guard vessels had been owned by private persons. Under the PVA framework, Marine Electronics has sufficiently alleged facts showing that it has an action against the United States for compensation for contract salvage services rendered to public vessels. Accordingly, this Court has jurisdiction over Marine Electronics' claims because the SAA and PVA effectively waive the United States' sovereign immunity.

B.     Commercial Instruments and Maritime Liens Act

Next, the Government argues that the Commercial Instruments and Maritime Liens Act, 46 U.S.C. § 31342 ("CIMLA"), which creates the cause of action that Marine Electronics is pursuing, precludes Marine Electronics from filing the instant case because the Chandeleur and Vise are "public vessels." The CIMLA sets forth the requirements for establishing a maritime lien:

> (a) Except as provided in subsection (b) of this section, a person providing necessaries to a vessel on the order of the owner or a person authorized by the owner
>     (1) has a maritime lien on the vessel;
>     (2) may bring a civil action in rem to enforce the lien; and
>     (3) is not required to allege or prove in the action that credit was given to the vessel.
> (b) This section does not apply to a public vessel.

46. U.S.C. § 31342. In other words, to obtain a maritime lien, a person must: (1) provide necessaries; (2) to a vessel; (3) on the order of the owner or agent. Galehead, Inc. v. M/V Anglia, 183 F.3d 1242, 1244 (11th Cir. 1999). Although the CIMLA appears on its face to prohibit the filing of claims to enforce maritime liens against a public vessel of the United States, Eleventh Circuit precedent has established otherwise. See Bonanni, 959 F.2d at 1564; Turecamo of Savannah, Inc. v. United States, 36 F.3d 1083 (11th Cir. 1994).

In Bonnani, a subcontractor filed suit against the United States after the subcontractor was not paid for work performed on a U.S. Navy vessel. Bonnani, 959 F.2d at 1558. The main issue in Bonnani was whether the CIMLA precluded the imposition of maritime liens on public vessels. Id. at 1561. The Bonnani court determined, by examining legislative history, that Congress did not intend for the CIMLA to make any substantive change to the then-existing law. Id. at 1562. However, the Bonanni court also determined that Congress, in enacting the CIMLA, was attempting to reaffirm what it perceived to be a "longstanding rule against the imposition of

5

maritime liens against public vessels." Id. at 1563. Regardless of this finding, the Bonanni court held that it was the law of the Eleventh Circuit to allow a person who had provided necessaries to a public vessel to bring a maritime lien against that public vessel by suing the United States *in personam* on principles of *in rem* liability. Id.; see also Stevens Technical Services, Inc. v. United States, 913 F.2d 1521, 1524 (11th Cir. 1990) (holding that a similar "no lien" clause against public vessels in the PVA only precluded actions to seize or arrest vessels of the United States, but did not prohibit a plaintiff from bringing an action to foreclose on a maritime lien against a public vessel). Therefore, because Congress did not intend for the CIMLA to make any substantive change in the law, the Bonnani court held that the CIMLA did not prohibit claims against public vessels in the Eleventh Circuit. Bonanni, 913 F.2d at 1564.

In Turecamo of Savannah, Inc. v. United States, 36 F.3d 1083 (11th Cir. 1994), the Eleventh Circuit again addressed the issue of whether the CIMLA prohibits the imposition of a maritime lien against a public vessel. The Turecamo court held that the CIMLA did not preclude a towing company from bringing a maritime lien claim against the United States for an unpaid portion of the towing expenses for a U.S. Navy vessel. Id. at 1087. However, the Turecamo court noted that it recognized the towing company's claim because the court was "bound to follow the precedent set in Bonnani" and recommended that an *en banc* reconsideration of the Eleventh Circuit's holding in Bonnani may be appropriate. Id. To date, neither the Eleventh Circuit *en banc* nor the Supreme Court has overruled the rule set forth in Bonanni. Therefore, in the instant case, this Court must follow Bonnani and find that the CIMLA does not prohibit Marine Electronics from bringing its maritime lien claims against the Coast Guard vessels Chandeleur and Vise.

C.     Contract Dispute Act, 41 U.S.C. §§ 601-613

Finally, the United States argues that the Contracts Dispute Act, 41 U.S.C. §§ 601-613 ("CDA"), applies to the instant case because Marine Electronics' claim is "contractual in nature." (Doc. No. 16 at 4). The United States further argues that the CDA bars Marine Electronics' suit in this Court because Marine Electronics has not exhausted its administrative remedies as required by the CDA. Id.

The CDA is a statute that waives sovereign immunity for contractual claims against the United States and requires that all such claims be in writing and submitted to the contracting officer for a decision. 41 U.S.C. § 605. The Eleventh Circuit has held that the CDA does not apply to maritime liens asserted under the CIMLA, because the PVA and the SAA are the proper statutes to effect a waiver of the United States' sovereign immunity. Marine Coatings, 932 F.2d at 1375 n.4.

In Marine Coatings, a subcontractor filed a CIMLA maritime lien claim against the United States when the subcontractor was not paid by the general contractor for work it had performed on a U.S. Navy vessel. Id. at 1373. Similar to the facts in the instant case, the United States in Marine Coatings argued that the subcontractor's failure to comply with the administrative exhaustion requirements of the CDA barred its right to recovery in federal district court. The Marine Coatings court rejected that argument and concluded that the CDA did not apply to, and thus did not bar, the subcontractor's claim because the CIMLA creates a cause of action for plaintiffs to establish a maritime lien by suing the government *in personam* on principles of *in rem* liability. Id. at 1377. The court stated "[t]hough [plaintiff] would be precluded from bringing suit for recovery on the *contract* unless it complied with the CDA, the

CDA does not supersede admiralty provisions providing for another means of recovery." Id.; see also Bonnani, 959 F.2d at 1561 (holding that the CDA does not apply to CIMLA claims because the SAA and PVA provide for a waiver of sovereign immunity, and those jurisdictional grants are independent from the CDA).

In the instant case, Marine Electronics alleges in its complaint that it is bringing a civil action in admiralty against the United States pursuant to the CIMLA, 46 U.S.C. §§ 31301, *et seq*. (Doc. No. 1 ¶ 10). Marine Electronics also alleges that its claim is based on the foreclosure of a maritime lien which gives rise to an action *in rem* against the Chandeleur and Vise. Id. at ¶¶ 16, 21. Marine Electronics is not bringing suit for recovery on a contract. Therefore, the CDA does not preclude Marine Electronics from bringing its claim against the United States because the independent waivers of sovereign immunity under both the SAA and PVA, operating in conjunction with the CIMLA, allow Marine Electronics to bring its maritime lien claims against the United States.

**IV.     Conclusion**

For the foregoing reasons, it is ORDERED AND ADJUDGED that the United States' Motion to Dismiss and/or for Summary Judgment is DENIED.

**DONE AND ORDERED** at Tampa, Florida, this 2nd day of September, 2010.

*[signature]*
SUSAN C. BUCKLEW
United States District Judge

Copies to:
Counsel of Record